Slip Op. 18-44

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UTTAM GALVA STEELS LIMITED,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>**and**<br><br>**ARCELORMITTAL USA LLC, AK STEEL CORPORATION, STEEL DYNAMICS, INC., CALIFORNIA STEEL INDUSTRIES, INC., UNITED STATES STEEL CORPORATION, and NUCOR CORPORATION,**<br><br>        **Defendant-Intervenors.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 16-00162** |

### OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final determination following an antidumping duty investigation on certain corrosion-resistant steel products from India.]

Dated: April 18, 2018

Diana Dimitriuc-Quaia and Claudia D. Hartleben, Arent Fox LLP, of Washington, D.C., argued for Plaintiff Uttam Galva Steels Limited.  With them on the brief was John M. Gurley.  Of counsel were Matthew M. Nolan and Nancy A. Noonan.

Agatha Koprowski, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director, and Elizabeth A. Speck, Senior Trial Counsel.  Of counsel on the brief was Emma T. Hunter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington D.C.

Paul W. Jameson, Schagrin Associates, of Washington D.C., argued for Defendant-Intervenors Steel Dynamics, Inc. and California Steel Industries, Inc. With him on the brief were Roger B. Schagrin and Jordan C. Kahn.  Of counsel were Christopher T. Cloutier, Elizabeth J. Drake, and John W. Bohn.

R. Alan Luberda, Melissa M. Brewer, David C. Smith, Jr., Kathleen W. Cannon, and Paul C. Rosenthal, Kelley Drye & Warren, LLP, of Washington D.C., for Defendant-Intervenor ArcelorMittal USA LLC.

Stephen A. Jones and Daniel L. Schneiderman, King & Spalding, LLP, of Washington D.C., for Defendant-Intervenor AK Steel Corporation.

Timothy C. Brightbill, Tessa V. Capeloto, Alan H. Price, Adam M. Teslik, Christopher B. Weld, Cynthia C. Galvez, Derick G. Holt, Laura El-Sabaawi, Maureen E. Thorson, Stephanie M. Bell, and Usha Neelakantan, Wiley Rein, LLP, of Washington D.C., for Defendant-Intervenor Nucor Corporation.

Thomas M. Beline and Sarah E. Shulman, Cassidy Levy Kent (USA) LLP, of Washington, D.C., for Defendant-Intervenor United States Steel Corporation.  Formerly on the brief were Jeffrey D. Gerrish and Luke A. Meisner, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington D.C.


   Choe-Groves, Judge:  This case involves corrosion-resistant steel products from India. Plaintiff Uttam Galva Steels Limited ("Plaintiff" or "Uttam Galva") brings this action contesting the final determination in an antidumping duty investigation, in which the U.S. Department of Commerce ("Commerce" or "Department") found that certain corrosion-resistant steel products from India are being, or are likely to be, sold in the United States at less-than-fair value.  See Certain Corrosion-Resistant Steel Products From India, 81 Fed. Reg. 35,329 (Dep't Commerce June 2, 2016) (final determination of sales at less-than-fair value), as amended, 81 Fed. Reg. 48,390 (Dep't Commerce July 25, 2016) (amended final affirmative determination and issuance of antidumping duty orders) (collectively, "Final Results"); see also Issues and Decision Memorandum for the Final Determination of the Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from India, A-533-863, (May 24, 2016), available at

https://enforcement.trade.gov/frn/summary/india/2016-12986-1.pdf (last visited Apr. 11, 2018)

("Final IDM").  This matter is before the court on Plaintiff's Rule 56.2 motion for judgment on

the agency record challenging the Department's antidumping duty calculations.  See Mot. J.

Agency R., Mar. 16, 2017, ECF No. 47-1.   This case presents one issue: whether Commerce

erred in its determination of the amount of duty drawback adjustment for Uttam Galva when it

calculated the exempted and rebated import duties over total cost of production.  For the reasons

discussed below, the court concludes that Commerce's methodology is not in accordance with

the law.

## BACKGROUND

Commerce received petitions requesting the imposition of antidumping duties on imports

of corrosion-resistant steel products from multiple countries, including India, filed on June 3,

2015 on behalf of a group of domestic producers: United States Steel Corporation, Nucor

Corporation, ArcelorMittal USA, AK Steel Corporation, Steel Dynamics, Inc., and California

Steel Industries, Inc.  See Certain Corrosion-Resistant Steel Products From Italy, India, the

People's Republic of China, the Republic of Korea, and Taiwan: Initiation of Less-Than-Fair-

Value Investigations, 80 Fed. Reg. 37,228 (Dep't Commerce June 30, 2015) (initiation of less-

than-fair value investigation).  The Department initiated an investigation for the period of April

1, 2014 through March 31, 2015.  Id. at 37,229.  Commerce found that it would be impractical to

examine all exporters and producers, and therefore opted to examine two companies accounting

for the largest volume of U.S. imports of the subject merchandise during the investigation period.

See Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from India:

Respondent Selection, PD 63, bar code 3292985-01 (July 22, 2015).  Commerce selected two

companies, JSW Steel Limited and Uttam Galva, for examination.  See id.

Commerce published its preliminary results on January 4, 2016.  See Certain Corrosion-

Resistant Steel Products From India, 81 Fed. Reg. 63 (Dep't Commerce Jan. 4, 2016)

(affirmative preliminary determination of sales at less-than-fair value and postponement of final

determination) ("Preliminary Results"); see also Decision Memorandum for the Preliminary

Determination in the Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel

Products from India at 1, A-533-863, (Dec. 21, 2015), available at

https://enforcement.trade.gov/frn/summary/india/2015-32758-1.pdf (last visited Apr. 11, 2018)

("Prelim. IDM").  Pursuant to the Department's differential pricing analysis, Commerce used the

average-to-average methodology to calculate dumping margins for both mandatory respondents.

See Prelim. IDM at 9–11.  It assigned a preliminary weighted-average dumping margin of 6.64%

for JSW and a weighted-average dumping margin of 6.92% for Uttam Galva.  Preliminary

Results, 81 Fed. Reg. at 65.

The Department granted a preliminary duty drawback adjustment to Uttam Galva based

on the company's participation in three duty programs: the Duty Drawback Scheme, Advance

Authorization Program, and Duty Free Import Authorization Program.  See Prelim. IDM at 16.

The Duty Drawback Scheme is a rebate program in which Uttam Galva "pays duties at the time

of purchase based on a company-specific rate," and the duties are later refunded.  Verification of

the Cost Response of Uttam Galva Steels Limited in the Antidumping Duty Investigation of

Certain Corrosion-Resistant Steel Flat Products from India 17, PD 379, bar code 3452604-01

(Mar. 23, 2016).  The Advance Authorization Program and Duty Free Import Authorization

Program are exemption schemes in which Uttam Galva obtains a license and "is allowed to import specified quantities of [inputs] duty free as per Standard Input Output Norm ('SION') of the finished good." Id. at 16.

Following the preliminary determination, Uttam Galva submitted revised statistics and a case brief in response. Final Results, 81 Fed. Reg. at 35,329. Commerce held a hearing on May 4, 2016. Id.

Commerce issued its final determination on June 2, 2016. See id. Commerce calculated a final weighted-average dumping margin of 4.44% for JSW, 3.05% for Uttam Galva, and 3.86% for all others. See id. at 35,330. Following an affirmative final material injury determination from the International Trade Commission, Commerce published the antidumping duty order on July 25, 2016. See id. at 35,329.

Uttam Galva commenced this action contesting Commerce's Final Determination on August 23, 2016, ECF No. 1, and filed its complaint on September 22, 2016, ECF No. 9. Plaintiff filed a Rule 56.2 motion for judgment on the agency record and supporting memorandum. See Mot. J. Agency R., Mar. 16, 2017, ECF No. 47-1; Pl.'s Mem. Supp. Mot. J. Agency R., Mar. 16. 2017, ECF No. 47 ("Pl.'s Mem."). Defendant and Defendant-Intervenors submitted responses to Plaintiff's motion. See Def.'s Resp. Opp'n Pl.'s Mot. J. Agency R., June 29, 2017, ECF No. 51 ("Def.'s Resp."); Def.-Intervenors' Resp. Opp'n Pl.'s Mot. J. Agency R., July 13, 2017, ECF No. 53 ("Def.-Intervenors' Resp."). Plaintiff filed a timely reply. See Reply Br. Pl. Uttam Galva Steels Limited, Aug. 11, 2017, ECF No. 56 ("Pl.'s Reply"). This court held oral argument on January 18, 2018. See Oral Argument, Jan. 18, 2018, ECF No. 70.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and

28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final

determination in an antidumping duty investigation.[1]  The court "shall hold unlawful any

determination, finding or conclusion found . . . to be unsupported by substantial evidence on the

record or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial

evidence . . . . means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  A.L. Patterson, Inc. v. United States, 585 Fed. Appx. 778, 781–82 (Fed.

Cir. 2014) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)).

**DISCUSSION**

I.      **Legal Framework for Determining a Duty Drawback Adjustment**

Under the Tariff Act of 1930, as amended, Commerce conducts antidumping duty

investigations and determines whether goods are being sold at less-than-fair value.  See 19

U.S.C. § 1973.  If the Department finds that subject merchandise is being sold at less-than-fair

value, and if the U.S. International Trade Commission finds that these less-than-fair value

imports materially injure a domestic industry, the Department issues an antidumping duty order

imposing antidumping duties equivalent to "the amount by which the normal value exceeds the

export price (or the constructed export price) for the merchandise."  Id.  Generally, export price

is defined as the price at which the subject merchandise is first sold in the United States, whereas

the normal value represents the price at which the subject merchandise is sold in the exporting

---

[1] All citations to the U.S. Code are to the 2012 edition.  All further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code.

country.  See id. §§ 1677a(a), 1677b(b)(i).  Constructed export price ("CEP") is "the price at

which the subject merchandise is first sold . . . in the United States . . . to a purchaser not

affiliated with the producer or exporter."  Id. § 1677a(b).  Commerce calculated both an export

price and constructed export price in its investigation because Uttam Galva exports to both

affiliated and non-affiliated companies. [2]  See Prelim. IDM at 13.  The statute provides further

guidance for determining export price as follows:

> (c) Adjustments for export price and constructed export price
> The price used to establish export price and constructed export price shall be--
>
> > (1) increased by--
> >
> > > (B) the amount of any import duties imposed by the country of exportation
> > > which have been rebated, or which have not been collected, by reason of
> > > the exportation of the subject merchandise to the United States.

19 U.S.C. § 1677a(c)(1)(B).  This calculation is known as a duty drawback adjustment.

The purpose of a duty drawback adjustment is to ensure a fair comparison between

normal value ("NV") and export price ("EP").  See Saha Thai Steel Pipe (Public) Co. Ltd. v.

United States, 635 F.3d 1335, 1338 (Fed. Cir. 2011); Torrington Co. v. United States, 68 F.3d

1347, 1352–53 (Fed. Cir. 1995).  Under a duty drawback program, producers may receive an

exemption or rebate for imported inputs used in exported merchandise.  See Saha Thai, 635 F.3d

at 1338.  As a result, producers are still required to pay import duties for domestically-sold

goods, which leads to an increase in normal value.  See id.  A duty drawback adjustment

"corrects this imbalance, which could otherwise lead to an inaccurately high dumping margin, by

---

[2] For readability purposes, all discussion of export price in this opinion will also encompass
constructed export price.

increasing EP to the level it likely would be absent the duty drawback." Id.; see also S. Rep. No.

67-16, at 12 (1921).

Commerce applies a two-pronged test to determine whether a producer qualifies for a

duty drawback adjustment. See Saha Thai, 635 F.3d at 1340. The producer must prove "(1) that

the rebate and import duties are dependent upon one another, or in the context of an exemption

from import duties, that the exemption is linked to the exportation of the subject merchandise,

and (2) that there are sufficient imports of the raw material to account for the duty drawback on

the exports of the subject merchandise." Id.

Commerce awarded Uttam Galva a duty drawback adjustment due to the company's

participation in three programs: the Duty Drawback Scheme, the Advance Authorization

Program, and the Duty Free Import Authorization Program. Both Plaintiff and Defendant agree

that the duty drawback adjustment was properly granted here. See Pl.'s Mem. 14–15; Def.'s

Resp. 13.

Defendant-Intervenors question whether Uttam Galva met the two-prong test for a duty

drawback adjustment. See Def-Intervenors' Resp. 3. Plaintiff asserts that Defendant-

Intervenors' challenge is improper because the "cross-claim seeks to enlarge the scope of the

issues in dispute between Uttam Galva and the Government." Pl.'s Reply 21–22. The court

agrees with Plaintiff that Defendant-Intervenors' challenge is procedurally deficient. "An

intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is

not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."

Vinson v. Washington Gas Light Co., 321 U.S. 489, 498 (1944). Because the issue of whether

Uttam Galva met the Department's two-prong test for a duty drawback adjustment did not appear

in the pleadings or in a separate Rule 56.2 motion for judgment on the agency record, it is not

properly before the court.  Nevertheless, the court recognizes that sufficient evidence exists on

the record to support Commerce's application of its two-prong test to Uttam Galva.  Plaintiff

provided the relevant rules and explanations for each program under which it claimed an

adjustment, and also demonstrated that it imported a sufficient amount of raw materials to merit

a refund or exemption of duties.  See Final IDM at 7; see also Prelim. IDM at 16–17; Exhibits

3S-6, 3S-7, 3S-8, and 3S-10, Third Supp. Sections B & C Questionnaire Resp. Uttam Galva

Steels Limited, PD 272–278, bar code 3422242-01 (Dec. 2, 2015) (licenses for Advanced

Authorization Program, Duty Free Import Authorization Program, and Duty Drawback Scheme,

and rules for the duty drawback programs administered by the Government of India,

respectively).

II.       **Commerce's Methodology of Calculating the Duty Drawback Adjustment**

The primary issue in dispute is whether Commerce reasonably calculated the duty

drawback adjustment for Uttam Galva.  The Department made its calculation by reducing the

duty drawback adjustment to Uttam Galva's U.S. sales and allocating the duty exemptions and

rebates claimed over total cost of production.  See Def.'s Br. 17.  Uttam Galva argues that the

Department's calculation is inconsistent with the statute and the agency's alleged practice of

computing exempted and rebated duties over total exports to the U.S.  See Pl.'s Mem. 10–11.

Because the statute permits a drawback on duties that are rebated or exempted "by reason of" the

exportation of the subject merchandise to the United States, Uttam Galva contends that

Commerce's calculation of the duty drawback adjustment is contrary to the statute's plain

language in that the chosen methodology ignores the statute's textual linkage between the

adjustment and the act of exporting.  See id. at 16.  For the following reasons, the court finds that

Commerce's calculation of the amount of duty drawback adjustment was not in accordance with

the law.

When determining the amount of a duty drawback adjustment, the Department has

accepted the figures historically reported by a respondent for rebated or exempted duties in a

given year, and divided it by the number of subject exports.  See Prelim. IDM at 14; see also

Final IDM at 7.  Commerce argues in this case that its prior methodology did not account

properly for situations where a respondent utilizes inputs from both foreign and domestic

sources.  See Prelim. IDM at 14; Final IDM at 8–9.  As a result, the calculations using the

Department's normal methodology would not produce "the desired import duty neutrality" for

"an equitable comparison of EP or CEP and NV."  Final IDM at 7.  The Department attempted to

rectify this perceived imbalance by utilizing the following methodology:

> The amount of the duty drawback adjustment should be determined based on the import
> duty absorbed into, or imbedded in, the overall cost of producing the merchandise under
> consideration.  That is, we assume for dumping purposes, that imported raw material and
> the domestically sourced raw material are proportionally consumed in producing the
> merchandise, whether sold domestically or exported. . . . Accordingly, in order to
> accurately determine an adjustment for 'the amount of import duties imposed . . . which
> have been rebated, or which have not been collected, by reason of the exportation of the
> subject merchandise to the United States," the Department has made an upward
> adjustment to EP and CEP based on the per unit amount of the import duty cost included
> in the COP for each CONNUM.

Id. at 8–9 (footnote omitted).  Commerce calculated Uttam Galva's duty drawback adjustment by

taking the duty amount either rebated or not collected (i.e., exempted) and allocating it over the

total cost of production of the subject merchandise for the relevant investigatory period, based on

the cost of inputs during that time.  See Prelim. IDM at 15; Final IDM at 9.  The Government

explains Commerce's chosen methodology using the following equations:

$$\text{Exempted Duty Adjustment Rate} = \frac{\text{Total Duties Exempted Pursuant to AAP} + \text{Total Duties Exempted Pursuant to DFIA}}{\text{Total Cost of Zinc} + \text{Total Cost of Hot-Rolled Coil} + \text{Total Cost of Cold-Rolled Coil}}$$

$$\text{Rebated Duty Adjustment Rate} = \frac{\text{Paid Import Duties on Zinc} + \text{Paid Import Duties on Hot-Rolled Coil} + \text{Paid Import Duties on Cold-Rolled Coil}}{\text{Total Cost of Zinc} + \text{Total Cost of Hot-Rolled Coil} + \text{Total Cost of Cold-Rolled Coil}}$$

Exempted Duty Adjustment Amount =

    Exempted Duty Adjustment Rate x (Manufacturing Cost of Zinc + Manufacturing Cost of Hot-Rolled Coil + Manufacturing Cost of Cold-Rolled Coil)

Rebated Duty Adjustment Amount =

    Exempted Duty Adjustment Rate x (Manufacturing Cost of Zinc + Manufacturing Cost of Hot-Rolled Coil + Manufacturing Cost of Cold-Rolled Coil)

Total Duty Drawback Adjustment Amount =

    Exempted Duty Adjustment Amount + Rebated Duty Adjustment Amount

Def.'s Resp. 18–19.  Defendant-Intervenor provides the following sample calculations, which

describe Commerce's methodology substantively the same, but in an alternative format:

| Units Produced | 100,000 | a |
|---|---|---|
|  |  |  |
| Purchase of imported raw materials with no duty exemption | $500,000 | b |
| Purchase of imported raw materials with duty exemption | $500,000 | c |
| Purchase of domestic raw materials | $1,000,000 | d |
| Total raw materials | $2,000,000 | e = b + c + d |
|  |  |  |
| Import duty % | 5.0% | f |
| Duty paid on imported inputs | $25,000 | g = f * b |

| Duty exempted on imported inputs | $25,000 | h = f * c |
|---|---|---|
| Cost of production | $3,000,000 | i |
| | | |
| Domestic sales units | 50,000 | j |
| Domestic sales | $1,600,000 | k |
| Domestic unit price | $32.00 | L |
| | | |
| Export sales units | 50,000 | m |
| Export sales | $1,550,000 | n |
| Export unit price | $31.00 | o = n / m |
| | | |
| What Commerce did | | |
| Duties paid | $25,000 | g |
| Duties exempted | $25,000 | h |
| Duties paid per finished unit | $0.25 | p = g / a |
| Duties exempted per finished unit | $0.25 | q = h / a |
| Cost of production per unit | $30.00 | r = i / a |
| Unit cost of production plus exempted duty | $30.25 | s = r + q |
| | | |
| Export price per unit | $31.00 | t = n / m |
| Duty drawback adjustment | $.50 | u = p + q |
| Adjusted export price | $31.50 | v = t + u |
| Dumping Margin | 1.59% | w = (L – v) / v |

Def.-Intervenors' Resp. 24. Uttam Galva claims that Commerce's methodology improperly

"reduced the duty drawback adjustment to Uttam Galva's U.S. sales by allocating duty

exemptions claimed over total production." Pl.'s Mem. 15.

Defendant contends that Commerce's methodology reflects the "matching principle" and

"duty-neutral framework" espoused by the Court of Appeals for the Federal Circuit in Saha Thai.

See Def.'s Resp. 19–21. The court disagrees with Defendant's reading of the case. Unlike here,

the duty drawback regime at issue in Saha Thai was one based solely on exemptions. Because

the duties in Saha Thai were exempted, they were not recorded in the respondent company's

books as an expense incurred. Commerce therefore increased the company's cost of production

("COP") and constructed value ("CV"), which are both part of the Department's normal value

calculation, to account for the duties presumably paid on inputs for products sold in the domestic

market.  The Court of Appeals for the Federal Circuit recognized that:

> [T]he entire purpose of increasing EP is to account for the fact that the import duty costs are reflected in NV (home market sales prices) but not in EP (sales prices in the United States).  An import duty exemption granted only for exported merchandise has no effect on home market sales prices, so the duty exemption should have no effect on NV. Thus, because COP and CV are used in the NV calculation, COP and CV should be calculated as if there had been no import duty exemption.  It would be illogical to increase EP to account for import duties that are purportedly reflected in NV, while simultaneously calculating NV based on a COP and CV that do not reflect those import duties.  Under the "matching principle," EP, COP, and CV should be increased together, or not at all.

Saha Thai, 635 F.3d at 1342–43.  Because Commerce adjusted EP in the Saha Thai case to

account for the duty drawback adjustment received by the respondent company, the Court of

Appeals for the Federal Circuit concluded that the subsequent adjustment to NV to reflect the

duties paid on inputs for products sold in the home market was proper.  The "matching principle"

relates, therefore, to an adjustment to normal value with respect to the particular facts, exemption

program, and recordkeeping practices presented in Saha Thai, and should not be expanded to

encompass all duty drawback adjustment calculations made by Commerce.  Here, the parties do

not allege deficiencies in Uttam Galva's recordkeeping or in the normal value calculation to

warrant application of the matching principle.  When viewed in this context, Saha Thai's

matching principle does not support Commerce's methodology in the instant matter before this

court.

Commerce's upwards adjustment to EP, as mandated by the statute, itself creates the

"duty-neutral framework" under which the agency can compare NV and EP.  Section

1677a(c)(1)(B) contemplates an upward adjustment to EP, allowing for an increase in the export

price or constructed export price by "the amount of any import duties imposed by the country of

exportation which have been rebated, or which have not been collected, by reason of the

exportation of the subject merchandise to the United States."  19 U.S.C. § 1677a(c)(1)(B).  The

purpose of the adjustment is to correct an imbalance and prevent an inaccurately high dumping

margin by increasing EP to the level it likely would be absent a duty drawback.  Commerce's

allocation of duties rebated and exempted over total cost of production in this case is inconsistent

with the statute because allocating duty drawback to "total cost of production" encompasses

home market sales, which could not earn a duty drawback since Uttam Galva did not receive any

exemptions or rebates on foreign inputs utilized in products sold in the home market.

Commerce's flawed methodology includes costs associated with manufacturing goods sold in the

domestic market, lessens the upwards adjustment, and conceptually reintroduces an imbalance in

the dumping margin calculation.  It fails to adequately connect the adjustment to duties forgiven

"by reason of" the products' exportation to the United States.  Because Commerce's method of

calculating Uttam Galva's duty drawback adjustment is inconsistent with the statute, the court

rejects Defendant's argument and concludes that Commerce's methodology is unreasonable, is

not in accordance with the law, and contravenes the plain language of section 1677a(c)(1)(B).

Furthermore, the facts in the record do not support the Department's implementation of a

new methodology in this case.  Commerce cited the possible use of both foreign and

domestically-sourced inputs as a primary factor in creating its new methodology.  See Prelim.

IDM at 14; Final IDM at 8–9.  Commerce's former methodology risked overstating the amount

of duty drawback adjustment that a respondent should receive, which could lead to an unusually

high export price and the potential elimination of a dumping margin where there should be one.

Uttam Galva counters that Commerce's observation alone "is not indicative of unusual facts."

Pl.'s Mem. 15.  The court agrees that Commerce's reasoning is not enough to support its use of

the new methodology in this case because the agency's perceived solution does not address the

facts present in this case.  Here, Uttam Galva was able to "identif[y] the raw materials imported

for which it paid an import duty, . . . as well as worksheets linking the raw materials to

production of merchandise under consideration."  Prelim. IDM at 16–17.  Evidence in the record

shows that Uttam Galva was able to track what import duties were paid on domestic inputs, and

thus the problem articulated by Commerce does not exist in this case.  Moreover, Commerce has

not historically required respondents to trace the imported inputs directly from importation into

the home country through exportation to the United States.  See id. at 14.  Commerce's solution

is not reasonably connected, therefore, to the facts present in the instant matter and to a solution

to the perceived overstatement of duty drawback adjustment.

Uttam Galva also contests Commerce's calculation of the duty drawback adjustment on

the premise that it contravenes the agency's past practice, and thus should have been subject to

notice and comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553.  The

court disagrees.  Courts have recognized that agencies may deviate from past practice, as long as

they provide a reasonable explanation for the change.  See SKF USA Inc. v. United States, 630

F.3d 1365, 1373 (Fed. Cir. 2011) (acknowledging that "[w]hen an agency changes its practice, it

is obligated to provide an adequate explanation for the change"); NMB Singapore Ltd. v. United

States, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009) (stating that, "while [Commerce's] explanations

do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a

reviewing court.").  The Department's choice of a new methodology did not require notice and

comment rulemaking, but did mandate a well-reasoned explanation.  Commerce stated that its

previous methodology of "[a]djusting EP/CEP for the full amount of duties imposed . . . when

some of the same inputs are domestically sourced, results in a larger adjustment to the EP/CEP

than reflected in the NV, creating an imbalance."  Prelim. IDM at 15.  The Department decided

to "take these distortions into account" by making "an upward adjustment to EP and CEP . . . by

properly allocating the amount rebated or not collected to all production for the relevant period

based on the costs of inputs during the POI.  This ensures that the amount added to both sides of

the dumping calculations is equal, i.e., duty neutral."  Id.  Commerce based its new methodology

on the "only reasonable assumption" that "the imported raw materials and domestically sourced

raw materials are consumed proportionally between the corresponding domestic sales and export

sales, as then both the U.S. price and NV will be import duty inclusive."  Final IDM at 9.  As

stated before, Commerce failed to provide a reasonable explanation because its new

methodology overcompensated for any imbalances and erroneously took into account domestic

home market sales, which in this case are not subject to duty drawback adjustments.

Commerce's explanation does not justify why its new methodology should include domestic

home market sales that are not otherwise subject to duty drawback.[3]

---

[3] Uttam Galva further reserves its right to challenge Commerce's differential pricing analysis if
on remand Commerce recalculates the company's margin using a comparison methodology other
than average-to-average.  See Pl.'s Mem. 3.  Because Commerce employed the average-to-
average method, Plaintiff's challenge is premature, and the court will decline to address it at this
time.

**CONCLUSION**

The court concludes that Commerce's calculation of the amount of Uttam Galva's duty

drawback adjustment was unreasonable and not in accordance with the law.  The court remands

the Final Results for redetermination.  On remand, the Department should recalculate Uttam

Galva's duty drawback adjustment using a methodology that is consistent with this opinion.

Accordingly, it is

        **ORDERED** that Uttam Galva's Rule 56.2 Motion for Judgment on the Agency Record is

granted in part; and it is further

        **ORDERED** that the Final Results are remanded to the U.S. Department of Commerce

for further proceedings; and it is further

        **ORDERED** that the U.S. Department of Commerce shall file the remand redetermination

ninety days from the date of this opinion; and it is further

        **ORDERED** that USCIT Rule 56.2(h) shall govern thereafter.


                                                                    /s/   Jennifer Choe-Groves
                                                                     Jennifer Choe-Groves, Judge

Dated: April 18, 2018
         New York, New York